UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOSE MONTES OPICO,

              Plaintiff,

              v.

CONVERGENT OUTSOURCING, INC.,

              Defendant.

Case No. C18-1579RSL

ORDER REGARDING
CROSS-MOTIONS FOR
SUMMARY JUDGMENT

## I.  INTRODUCTION

This matter comes before the Court on (1) plaintiff's motion for partial summary judgment (Dkt. # 25) and (2) defendant's motion for summary judgment (Dkt. # 34). The Court, having reviewed the memoranda, declarations, and exhibits submitted by the parties,[1] finds as follows:

## II.  BACKGROUND

Plaintiff alleges that defendant Convergent Outsourcing, Inc. attempted to collect from him a debt owed on a T-Mobile account and that the account in question was not his. In other words, plaintiff asserts that defendant sought collection from the wrong person. Defendant does not dispute that it attempted to collect from plaintiff on the T-Mobile account in question, but defendant alleges that it verified that the account information matched plaintiff's personally

---

[1] The Court finds this matter suitable for disposition without oral argument.

ORDER REGARDING CROSS-MOTIONS FOR
SUMMARY JUDGMENT - 1

1  identifiable information. After defendant learned that plaintiff was disputing the debt, defendant
2  claims that it ceased collection activities.

3      On September 28, 2018, plaintiff filed suit against defendant and alleged violations of the
4  Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692e–1692g; the Washington
5  Collection Agency Act ("WCAA"), RCW 19.16.250, 19.16.440; and the Washington Consumer
6  Protection Act ("WCPA"), RCW 19.86 *et seq.* Dkt. # 1-1 ¶¶ 20–40. Defendant removed this
7  matter to federal court because the action arises under federal law (the FDCPA). 28 U.S.C.
8  § 1331; Dkt. # 1. Although the Court struck defendant's affirmative defenses, Dkt. # 15, the
9  Court permitted defendant to file an amended answer reasserting bona fide error as an
10 affirmative defense. Dkt. # 28.

11     Before addressing the merits of the parties' cross-motions for summary judgment, the
12 Court will first evaluate plaintiff's requests to strike material.

13 **III.    REQUEST TO STRIKE CITATIONS AND ARGUMENTS RELATED TO**
14 **VICTORY LANE**

15     Defendant's motion for summary judgment cites to Long v. Bergstrom Victory Lane,
16 Inc., 2018 WL 4829192, at *2 (E.D. Wis. Oct. 4, 2018), and plaintiff requests that the Court
17 strike defendant's citations and associated arguments. Dkt. # 37 at 3–4. Defendant summarizes
18 the case as standing for the proposition that "pulling a credit report for use in connection with
19 the 'collection of an account' is the *permitted* and *preferred* way of confirming debts." Dkt. # 34
20 at 6, 21, 29 (emphases added). The parties appear to agree that Victory Lane properly stands at
21 least for the principle that the Fair Credit Reporting Act, which authorizes the pulling of credit
22 reports for "*permissible* purposes," includes the "collection of an account of a consumer" among
23 such purposes. Dkts. # 37 at 3–4, # 38 at 8–9 (emphasis added). The Court finds no fault with
24 this interpretation of Victory Lane. Defendant overextends Victory Lane, however, in citing it
25 for the principle that pulling a credit report is a *preferred* way of confirming debts. While the
26 Court will not strike the citations and arguments, it will not stretch Victory Lane's meaning in
27 the way defendant first articulated it.

28

ORDER REGARDING CROSS-MOTIONS FOR
SUMMARY JUDGMENT - 2

## IV.    REQUEST TO STRIKE ALISIA STEPHENS' DECLARATION

Defendant's response to plaintiff's motion for summary judgment, and defendant's cross-motion for summary judgment rely upon a declaration by Alisia Stephens (Dkts. # 32, # 35). Plaintiff requests that the Court strike paragraphs 4–5 of this declaration. Dkts. # 33 at 3–4, # 37 at 4–5. "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). The paragraphs with which plaintiff takes issue are set forth below:

> 4.    The T-Mobile account at issue ending -5670 (the "Account") was opened using Plaintiff's name, social security number and date of birth, with a billing address in the same city where Plaintiff resided. On or about May 25, 2018, the Account was placed with Convergent for collection from Plaintiff.
>
> 5.    On or about May 25, 2018, Convergent obtained Plaintiff's credit report, in part, to confirm the information received from T-Mobile via its placement file. Plaintiff's credit report confirmed that the social security number, date of birth and residence in the city of Federal Way matched the information on the T-Mobile account.

Dkts. # 32 at 2. Plaintiff contends that paragraph 4 lacks foundation and that "there is no evidence or indication as to what information was used to open any accounts at all." Dkts. # 33 at 3, # 37 at 5. Additionally, plaintiff argues that paragraph 5 cannot stand because it constitutes inadmissible hearsay by discussing a credit report's contents without "submitting a copy or any other information." Dkts. # 33 at 3, # 37 at 5.

Defendant attempted to lay the foundation for Stephens' testimony that the T-Mobile account at issue was opened using plaintiff's personally identifiable information by explaining Stephens' role as a Litigation Support Specialist for defendant, her personal knowledge of and experience in defendant's business operations, and her review of defendant's business records. See Dkt. # 32 ¶¶ 1–3. The T-Mobile account statements that defendant sent to plaintiff clearly listed his name as the account holder, which indicates at least that his name was used to open the account. Dkt. # 32-4. As for the statement that the social security number, date of birth, and city

of residence used to open the T-Mobile account were in fact consistent with plaintiff's information, the source for this knowledge is unclear. Stephens' experience in defendant's business operations and review of defendant's business records does not mean that she has knowledge of plaintiff's true personally identifiable information. It appears that Stephens' knowledge on this point likely stems only from the alleged comparison of plaintiff's credit report information and the T-Mobile account information listed for plaintiff. See Dkts. # 30 at 17, # 34 at 21 ("The credit report confirmed that Plaintiff's full name, social security number and date of birth were used to open the Account, and that the address associated with it was in the same city where Plaintiff resided"). Given that the report has not been provided and Stephens' knowledge is based on her review of the report, portions of paragraphs 4–5 are inadmissible for the purpose of demonstrating the truth of the matter asserted. That said, defendant asserts that it has not offered Stephens' testimony regarding the credit report for the truth of any information contained in the report; rather defendant maintains that it has offered this testimony only for the purpose of demonstrating defendant's good faith in contacting plaintiff. Dkt. # 38 at 9–10. The Court will therefore consider this testimony only as evidence that defendant contacted plaintiff after attempting to verify through the credit report comparison that plaintiff was the correct person to contact regarding the debt, not as evidence that the credit report information actually matched the account information, or that the account was in fact opened using plaintiff's social security number, date of birth, and an address with the same city. See Waller v. Mann, No. 2:17-CV-1626-RSL, 2019 WL 3996866, at *2 (W.D. Wash. Aug. 23, 2019) (finding that statements were not based upon personal knowledge, and therefore were not admissible, when the conclusions were based on statements by others not before the court).

## V.   CROSS-MOTIONS FOR SUMMARY JUDGMENT (DKTS. # 25, # 34)

The parties have filed cross-motions for summary judgment on the issue of liability under the FDCPA, WCAA, and CPA. See Dkts. # 25, # 34.

**A.       Legal Standard for Summary Judgment**

Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>Fresno Motors, LLC v. Mercedes Benz USA, LLC</u>, 771 F.3d 1119, 1125 (9th Cir. 2014). The moving party "bears the initial responsibility of informing the district court of the basis for its motion." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Where the nonmoving party will bear the burden of proof at trial, the moving party need not "produce evidence showing the absence of a genuine issue of material fact," but instead may discharge its burden under Rule 56 by "pointing out . . . that there is an absence of evidence to support the nonmoving party's case." <u>Id.</u> at 325.

Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." <u>Id.</u> at 324. "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." <u>Arpin v. Santa Clara Valley Transp. Agency</u>, 261 F.3d 912, 919 (9th Cir. 2001) (internal citation omitted). "An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party." <u>In re Barboza</u>, 545 F.3d 702, 707 (9th Cir. 2008) (internal citation omitted). On cross-motions for summary judgment, the Court evaluates the motions separately, "giving the nonmoving party in each instance the benefit of all reasonable inferences." <u>Lenz v. Universal Music Corp.</u>, 801 F.3d 1126, 1130–31 (9th Cir. 2015) (citation omitted).

**B.       Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692e–1692f**

Plaintiff contends that partial summary judgment should be granted in its favor on its FDCPA claims because defendant violated 15 U.S.C. §§ 1692e–1692f[2] when it attempted to collect debt from the wrong person. Defendant contends that an attempt to collect a debt from the

---

[2] Although plaintiff initially alleged in his Complaint that defendant also violated 15 U.S.C. § 1692g, plaintiff has since withdrawn this claim. Dkt. # 37 at 6.

1  wrong person does not violate §§ 1692e–1692f, and even if it did, defendant has presented a

2  valid bona fide error defense.

3       The Court concludes that attempting to collect a debt from the wrong person may violate

4  § 1692e, but where that is the only wrong alleged, such conduct does not violate § 1692f.

5  Because a genuine dispute exists as to material facts related to the bona fide error defense,

6  summary judgment will not be granted to either party for the majority of plaintiff's § 1692e

7  claims. Because there is no genuine dispute as to material facts related to the § 1692f claim, the

8  Court grants summary judgment to defendant on the issue of § 1692f liability.

9      **1.    The FDCPA is a strict liability statute and the bona fide error defense**
10         **operates as the exception to strict lability.**

11      One of the central purposes of the FDCPA is to protect consumers from "abusive debt

12 collection practices by debt collectors."[3] 15 U.S.C. § 1692(e). "[T]the FDCPA is a strict liability

13 statute in that plaintiff need not prove an error was intentional." Reichert v. Nat'l Credit Sys.,

14 Inc., 531 F.3d 1002, 1004 (9th Cir. 2008) (citing Clark v. Cap. Credit & Collection Servs., Inc.,

15 460 F.3d 1162, 1176 & n.11 (9th Cir. 2006)). A "narrow exception to strict liability" exists via

16 the bona fide error defense, which is an affirmative defense for which the debt collector has the

17 burden of proof. Id. at 1005–06. The bona fide error defense provides:

> A debt collector may not be held liable in any action brought under this subchapter
> if the debt collector shows by a preponderance of evidence that the violation was
> not intentional and resulted from a bona fide error notwithstanding the
> maintenance of procedures reasonably adapted to avoid any such error.

21 15 U.S.C. § 1692k(c).

22     **2.    Attempting to collect a debt from the wrong person could violate § 1692e.**

23      Defendant relies on various district court cases for its assertion that a "debt collector does

24 not violate § 1692e merely by attempting to collect a debt from what turns out to be the wrong

25 person." Dkts. # 30 at 11–13, # 34 at 13–16. Defendant's argument on this topic is distinct from

---

27     [3] There is no dispute that defendant is a "debt collector" under the FDCPA such that it is subject
to § 1692e and § 1692f. See Dkt. # 25 at 5; Dkt. # 30; Dkt. # 34; 15 U.S.C. § 1692a(6).

ORDER REGARDING CROSS-MOTIONS FOR
SUMMARY JUDGMENT - 6

its argument that it has a valid bona fide error defense. The Court finds that the cases defendant relies upon fail to persuade the Court to short-circuit the § 1692e analysis in the manner defendant desires. While the Court is sympathetic to defendant's concerns regarding creating a standard of omniscience for debt collectors, these concerns may be addressed through the bona fide error defense.

In the first case defendant relies upon, Patton v. Financial Business and Consumer Solutions, Inc., No. 2:16-CV-2738 JCM (CWH), 2018 WL 3620488, at *3–4 (D. Nev. July 30, 2018), the District Court for the District of Nevada concluded that a consumer's claim that he was a victim of identity theft, and that he did not open the credit card account in question, did not give rise to a FDCPA violation under § 1692e where the debt collector merely sent the consumer a collection letter. For this conclusion, the district court cited Clark v. Capital Credit & Collection Services, Inc., 460 F.3d 1162 (9th Cir. 2006) and two other cases defendant relies upon: Story v. Midland Funding LLC, No. 3:15-cv-00194-AC, 2015 WL 7760190 (D. Or. Dec. 2, 2015) and Chenault v. Credit Corp Sols., Inc., No. CV 16-5864, 2017 WL 5971727 (E.D. Pa. Dec. 1, 2017). With respect to Clark, the district court quoted the following line: "if a debt collector reasonably relies on a debt reported by the creditor, the debt collector will not be liable for any errors." Patton, 2018 WL 3620488, at *3 (quoting Clark, 460 F.3d at 1177). The Ninth Circuit made clear in Reichert v. National Credit Systems Inc., 531 F.3d 1002, 1007 (9th Cir. 2008), however, that this line from Clark regarding reasonable reliance referred "to a reliance on the basis of procedures maintained to avoid mistakes" in the context of analyzing the bona fide error defense. The Patton decision did not mention the bona fide error defense, and while it observed that the debt collector relied on representations from the creditor regarding the consumer's alleged debt, it did not appear to analyze the *reasonableness* of that reliance. See Patton, 2018 WL 3620488, at *3 (stating only that the debt collector "relied on representations from Midland," the entity to whom the debt was transferred). Therefore, Patton's alignment with the Ninth Circuit's line of reasoning emanating from Clark is somewhat suspect.

1     Turning to <u>Story</u>, relied upon by <u>Patton</u> and otherwise cited by defendant, the District

2  Court for the District of Oregon rejected the premise that "attempting to collect a debt that the

3  consumer does not actually owe is false, misleading, or deceptive" for purposes of analyzing

4  § 1692e claims, but the first case the court cited in support of its conclusion was <u>Bleich v.</u>

5  <u>Revenue Maximization Group, Inc.</u>, 233 F. Supp. 2d 496, 501 (E.D.N.Y. 2002). <u>Story</u>, 2015 WL

6  7760190, at *6. The district court relied upon <u>Bleich</u> for the principle that "where a debt collector

7  has included appropriate language regarding the FDCPA debt validation procedure, the allegation

8  that the debt is invalid, standing alone, cannot form the basis of a lawsuit alleging fraudulent or

9  deceptive practices in connection with the collection of a debt." <u>Id.</u> (citing <u>Bleich</u>, 233 F. Supp.2d

10  at 501). This Court, however, is persuaded by the reasoning of another court within this District,

11  which concluded that <u>Bleich</u>'s § 1692e analysis is inconsistent with the Ninth Circuit's <u>Clark</u>

12  decision. See <u>Healey v. Trans Union LLC</u>, No. C09-0956JLR, 2011 WL 1900149, at *8 n.5

13  (W.D. Wa. May 18, 2011) ("In 2006, however, the Ninth Circuit disapproved the standard the

14  <u>Bleich</u> court applied to § 1692e claims. <u>Clark</u>, 406 F.3d at 1175. Although the <u>Clark</u> court agreed

15  with <u>Bleich</u> that a debt collector may reasonably rely on its client's statements when verifying a

16  debt pursuant to § 1692g, <u>see id.</u> at 1174, the court expressly disagreed with <u>Bleich</u>'s conclusion

17  that a plaintiff must show that the debt collector knowingly or intentionally misrepresented the

18  debt in order to prevail under § 1692e, <u>see id.</u> at 1175 (citing <u>Bleich</u>, 233 F.Supp.2d at 500–01)").

19     The other cases cited in <u>Story</u> either rely upon the disapproved <u>Bleich</u> approach to § 1692e

20  claims, <u>see</u> <u>Taylor v. Midland Credit Mgmt., Inc.</u>, No. 1:07-CV-582, 2008 WL 544548, at *3

21  (W.D. Mich. Feb. 26, 2008); <u>Daniel v. Asset Acceptance L.L.C.</u>, No. 06-15600, 2007 WL

22  3124640, at *5 (E.D. Mich. Oct. 23, 2007), or they concern distinguishable facts. <u>See</u> <u>Garcia v.</u>

23  <u>Gurstel Chargo, P.A.</u>, 2:12-cv-1930 JWS, 2013 WL 4478919, at *5 (D. Ariz. Aug. 21, 2013)

24  (finding no § 1692e violation where the court determined that the communications "invited

25  further dialogue about the debt" and did not assert that the consumer was responsible to pay the

26  debt); <u>Collins v. Asset Acceptance, LLC</u>, No. 09 C 583, 2010 WL 3245072 (N.D. Ill. Aug. 13,

27  2010) (finding no § 1692e violation where the communication at issue requested information

28

substantiating the consumer's identity-theft allegations).

Finally, the Chenault case defendant cites relied primarily on one case, other than Story (discussed above), for its conclusion that where the consumer was the victim of identity theft and never owed any debt, no violation of § 1692e arose: Farren v. RJM Acquisition Funding, LLC, No. 04-CV-995, 2005 WL 1799413, at *9 (E.D. Pa. July 26, 2005). See Chenault, 2017 WL 5971727, at *3 (citing Farren and Story). The Farren court concluded that there was no "false representation" because there was no evidence that the debt collector was aware that the debt did not belong to the consumer targeted at the time it communicated with the consumer. Farren, 2005 WL 1799413, at *9.[4] However, a debt collectors' conduct need not be knowing or intentional to violate § 1692e. Reichert, 531 F.3d at 1004. The Farren court sought to avoid creating an outcome where "any debt collector or data furnisher who communicates in anyway about a debt that is later discovered not to be owed by the individual the debt collector originally thought owed it would be liable under the FDCPA." Farren, 2005 WL 1799413, at *9. Because the bona fide error defense remains available to defendants, Farren provides little persuasive force for Chenault's conclusion and defendant's reliance upon it. This Court is not bound by the district court decisions defendant relies upon and declines to follow them.

### 3. Defendant's attempts to collect a debt from plaintiff may violate § 1692e such that the Court must evaluate defendant's bona fide error defense.

Section 1692e prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." In addition to asserting that defendant violated § 1692e by attempting to collect on a debt not owed by plaintiff, he asserts more specifically that defendant violated § 1692e(2), which prohibits, as relevant here, "[t]he false representation of . . . the character, amount, or legal status of any debt." Plaintiff also asserts that defendant violated § 1692e(5), which prohibits making a "threat to take any action that cannot legally be taken or that is not intended to be taken," and § 1692e(10), which prohibits

---

[4] Long v. Pendrick Capital Partners II, LLC, 374 F. Supp. 3d 515, 533-34 (D. Md. 2019), also cited by defendant, Dkt. # 30 at 13, involved reasoning similar to Farren.

ORDER REGARDING CROSS-MOTIONS FOR
SUMMARY JUDGMENT - 9

1  the "use of any false representation or deceptive means to collect or attempt to collect any debt."

2  Conduct violates § 1692e only where the "least sophisticated debtor," would be deceived or

3  misled, and this standard is "designed to protect consumers of below average sophistication or

4  intelligence" or who are "uninformed or naïve." Gonzales v. Arrow Fin. Servs., LLC, 660 F.3d

5  1055, 1062 (9th Cir. 2011).

6      The relevant communications between plaintiff and defendant occurred in 2018, and the

7  Court summarizes them in chronological order below:

8    1. **Letter from defendant to plaintiff dated June 1, 2018 (Dkt. # 32-1):**
9      This letter stated that T-Mobile's records reflected that plaintiff's account
10     had "a past due balance of $2,268.70." The letter also informed plaintiff
       that unless he notified defendant within 30 days after receipt of the letter
11     that he disputed the validity of the debt, defendant would assume that the
       debt was valid.
12    2. **Letter from defendant to plaintiff dated August 23, 2018 (Dkt. # 32-2):**
13     This letter communicated an opportunity for plaintiff to satisfy his account
       debt by paying 40% of the balance.
14    3. **Letter from plaintiff to defendant dated August 23, 2018 (Dkt. # 32-3)**
15     **and received by defendant on or about September 5, 2018 (Dkt. # 32**
       **¶ 8)[5]:** This letter notified defendant that plaintiff claimed to "not have any
16     knowledge" of the alleged debt and that he would be disputing the debt.
17     Plaintiff also requested that defendant "provide validation of this debt as
       required by 15 U.S.C. § 1692g."
18    4. **Letter from defendant to plaintiff dated September 12, 2018 (Dkt. # 32-**
19     **4):** This letter informed plaintiff that defendant completed its dispute
       investigation and found that the debt was "valid." The letter also attached
20     verification of the debt in the form of a T-Mobile monthly statement for the
21     account.

22  Defendant alleges that after it learned that plaintiff was disputing the debt, it "ceased collection

23  activity on the account" on September 5, 2018. Dkts. # 30 at 5, 15, # 34 at 6, 17. All three of

24

25      [5] Although Alisia Stephens' Declaration states that defendant received a letter from plaintiff dated
26  August 23, 2018 "[o]n or about September 5, 2019," Dkt. # 32 ¶ 8, the context of the other
    communications supports the Court's conclusion that this was a typographical error and the letter was
27  received in 2018, not 2019.

28

1  defendant's letters to plaintiff, including the September 12, 2018 letter, however, asserted that
2  they were "an attempt to collect a debt," Dkts. # 32-1 at 2, # 32-2 at 2, # 32-4 at 2, and the Court
3  will interpret them accordingly.

4      The Court concludes that plaintiff has presented triable issues of fact under § 1692e,
5  § 1692e(2), and § 1692e(10) where defendant represented in its collection letters that the
6  delinquent account belonged to plaintiff and a "hypothetical 'least sophisticated'" consumer
7  could have been misled or deceived by the letters into thinking that he owed a debt when he did
8  not. See Healey v. Trans Union LLC, No. C09-0956JLR, 2011 WL 1900149, at *8–9 (W.D.
9  Wash. May 18, 2011) (finding that the consumer had met her burden to establish a genuine issue
10 of material fact regarding a violation of § 1692e(2) where the debt collector represented in its
11 collection letters and communications to credit agencies that she was responsible for the account
12 debt and plaintiff did not inform the debt collector that she had been a victim of identity theft);
13 Basich v. Patenaude & Felix, APC, No. 5:11-CV-04406 EJD, 2013 WL 1755484, at *8–9 (N.D.
14 Cal. Apr. 24, 2013) (finding that even though plaintiff herself was not confused by the efforts to
15 levy plaintiff's bank account, since "she maintained all along that she did not owe the debt," it
16 was possible that a "hypothetical 'least sophisticated debtor'" could have been misled or
17 deceived). With respect to § 1692e(5), however, the Court finds that plaintiff has failed to present
18 triable issues of fact where the collection letters did not contain language that could be construed
19 as threatening any action. See Dkts. # 32-1, # 32-2, # 32-4.

20     This Court's conclusion regarding § 1692e, § 1692e(2), and § 1692e(10) requires the
21 Court to address the parties' arguments regarding the bona fide error defense. To prevail on this
22 defense, a debt collector must prove that "(1) it violated the FDCPA unintentionally; (2) the
23 violation resulted from a bona fide error; and (3) it maintained procedures reasonably adapted to
24 avoid the violation." McCollough v. Johnson, Rodenburg & Lauinger, LLC, 637 F.3d 939, 948
25 (9th Cir. 2011). "The procedures that have qualified for the bona fide error defense were
26 consistently applied by collectors on a debt-by-debt basis." Urbina v. Nat'l Bus. Factors Inc., 979
27 F.3d 758, 765 (9th Cir. 2020) (holding that a one-time agreement committing creditor-clients to

28

1    provide accurate information did not support a bona fide error defense). "The procedures

2    themselves must be explained, along with the manner in which they were adapted to avoid the

3    error." Reichert, 531 F.3d at 1007.

4         Here, the bona fide error at issue is attempting to collect a debt from the wrong person.

5    Defendant appears to acknowledge the fact that plaintiff did not open the account in question, see

6    Dkts. # 30 at 20, # 34 at 24 ("the fact that Plaintiff turned out not to have opened the Account

7    was unknown and unknowable to Defendant"), and defendant cites plaintiff's deposition

8    testimony to show that plaintiff was the victim of identity theft. Dkts. # 30 at 8, # 34 at 9.

9    Plaintiff asserts that he is not taking a position one way or the other as to whether identity theft

10   occurred and that identity theft is irrelevant to the claims and defense at issue, but he offers no

11   alternative explanation for the existence of the T-Mobile account debt in his name. See Dkt. # 33

12   at 4. In plaintiff's deposition testimony, he clearly claims that he was the victim of identity theft.[6]

13   See Dkt. # 31-2 at 4, 7 (e.g., "Q. Do you contend that you were a victim of identity theft? A. Yes,

14   I do" and "Q. But the account that Convergent was attempting to collect, you think someone else

15   used your information to open that account? A. Yes"). Additionally, plaintiff testified that he did

16   not notify T-Mobile or defendant that someone stole his identity. Dkt. # 31-2 at 8, 10. Despite

17   plaintiff's protestations to the contrary, identity theft is relevant to the bona fide error analysis

18   because it provides context for defendant's Rule 30(b)(6) witness testimony that no errors

19   occurred. Plaintiff cites this testimony as evidence of its theory that the bona fide error defense

20   does not apply, but the Court understands the error at issue to be defendant collecting a debt from

21   the wrong person where the account holder name was identical.

22        Defendant asserts that it maintained various procedures to ensure compliance with the

23   FDCPA, procedures that included: "(1) Account Scrubs; (2) Reporting Fraud or Dispute to

24

25        [6] In a parenthetical comment, plaintiff's reply brief states, "(Only in response to Convergent's
     suggestive deposition questioning, through an interpreter, did Plaintiff surmise the possibility that
26   Convergent's collection efforts resulted from having assumed Plaintiff's identity without permission.)"
     Dkt. # 33 at 4. Given that plaintiff cites no evidence for this remark, the Court sees no reason to find
27   plaintiff's own testimony unreliable.

28

ORDER REGARDING CROSS-MOTIONS FOR
SUMMARY JUDGMENT - 12

1    Clients (*i.e.,* to the original creditors like T-Mobile), (3) Dispute Handling; [(4)] Debt

2    Verification; and (5) Disputes." Dkts. # 30 at 19, # 34 at 23; <u>see</u> # 32-5, # 32-6. Defendant

3    alleges that prior to contacting plaintiff, defendant followed its Account Scrubs procedure to

4    "ensure that Plaintiff's personally identifiable information matched that on the Account," Dkt.

5    # 34 at 23, and that when defendant received plaintiff's August 23, 2018 letter claiming he had

6    no knowledge of the account and requesting validation, defendant followed its procedures

7    regarding Dispute Handling, Debt Verification, and Disputes. Dkt. # 34 at 23–24.

8         Turning first to "Account Scrubs" procedures, which occur before defendant makes initial

9    contact with consumers, defendant references the NCOA scrub performed by Revspring prior to

10   letters being mailed. <u>See</u> Dkts. # 34 at 23, # 32-5 at 1. This procedure characterizes the function

11   of the NCOA scrub as the following: "Identify most current address for customer prior to mailing

12   all letters." Dkt. # 32-5 at 1. The procedure does not characterize any of the scrubs as having the

13   function of confirming that the person to whom debt collection communications are directed is

14   actually the customer with the debt. <u>See</u> Dkt. # 32-5. Litigation Support Specialist Stephens

15   testified that prior to defendant contacting plaintiff, on or about May 25, 2018, defendant

16   "obtained Plaintiff's credit report, in part to confirm the information received from T-Mobile via

17   its placement file." Dkt. # 32 ¶ 5. Obtaining a credit report for an account holder, however, is not

18   specifically listed among the procedures defendant has provided for the Court's consideration.

19   <u>See</u> Dkts. # 32-5, # 32-6. It is possible that one or more of the scrubs involve obtaining a credit

20   report, but that is not clear from the text of the procedures. The Court finds that a genuine issue

21   of material fact exists as to whether obtaining credit reports was a procedure defendant

22   consistently applied and whether its Account Scrubs procedures were reasonably adapted to

23   prevent defendant from attempting to collect a debt from the wrong person. See <u>Basich v.</u>

24   <u>Patenaude & Felix, APC</u>, No. 5:11-CV-04406 EJD, 2013 WL 1755484, at *9 (N.D. Cal. Apr. 24,

25   2013) (finding that a debt collector's evidence was insufficient to satisfy the burden of showing

26   an absence of a genuine issue of material fact as to the bona fide error defense where only one

27   declaration vaguely described the procedures in place); <u>Cf.</u> <u>Wetzel v. AFNI, Inc.</u>, No. 10-6159-

28

TC, 2011 WL 6122963, at *4–5 (D. Or. Oct. 20, 2011), <u>report and recommendation adopted,</u> No. CIV. 10-6159-TC, 2011 WL 6122957 (D. Or. Dec. 8, 2011) (finding that a debt collector made a sufficient showing that it employed procedures "reasonably adapted to avoid" sending a collection letter to the wrong person by using LexisNexis to determine a debtor's most recent address when the associated information matched identifying characteristics between the person and the alleged account holder, including the name and social security number). Therefore, it would be premature to grant summary judgment to either party on plaintiff's § 1692e, § 1692e(2), and § 1692e(10) claims.

As for the procedures regarding "Dispute Handling" and "Disputes," when a consumer claims that they do not owe the debt in question, these procedures call for defendant's representatives to investigate the dispute, e.g., by getting information and documents from the client. Dkt. # 32-6 at 6, 10. Similarly, when a consumer requests debt verification, the "Debt Verification" procedure requires defendant's representatives to request proof of debt from the client and send it to the consumer. Dkt. # 32-6 at 8. Here, defendant's September 12, 2018 letter to plaintiff indicates that defendant investigated the dispute and provided a T-Mobile account statement to plaintiff in response to his request for validation, consistent with defendant's procedures.[7] Lastly, defendant's "Reporting Fraud or Dispute to Clients" procedure states as follows:

> When a consumer claims an account assigned to Convergent Outsourcing is disputed or fraud has taken place, we may be required to report that information to the client who assigned the account to us. If we have received enough detail or the client requires we notify them of disputes or fraud claims, we will follow their individual procedures on how to send them that information.

---

[7] Plaintiff argues that the September 12, 2018 collection letter establishes that defendant's procedures "were woefully ineffective" and "there is no [error] which can explain why this letter was sent." The Court disagrees. Dkt. # 33 at 10. Defendant's explanation for why this letter was sent is plausible. Plaintiff sent a letter to defendant disputing the debt and requesting that defendant provide validation as required by 15 U.S.C. § 1692g. Dkt. # 32-3. Given that plaintiff did not inform defendant of any circumstances related to fraud or identity theft, defendant's error in continuing to believe that it was communicating with the right debtor is understandable and does not, by itself, preclude defendant from succeeding on its bona fide error argument.

ORDER REGARDING CROSS-MOTIONS FOR
SUMMARY JUDGMENT - 14

Dkt. # 32-6 at 2. Defendant cites T-Mobile's recalling of the account from defendant on September 14, 2018 as evidence that defendant reported the dispute consistent with this procedure. The Court observes that obtaining additional information from the client to investigate the dispute, prove the debt, and notify the client of disputes/fraud, would seem to have the obvious function of, among other things, identifying when a debtor has been contacted in error. Ultimately, the reasonableness of these follow-up procedures must be viewed in the context of whatever procedures defendant had previously taken. And as discussed above, genuine issues of material fact exist regarding defendant's alleged initial procedures for avoiding the error in question, which preclude the Court from granting either parties' motion for summary judgment on liability for plaintiff's claims under § 1692e, 1692e(2), and § 1692e(10). The same is not true for plaintiff's § 1692e(5) claim. The Court hereby GRANTS defendant's motion for summary judgment on the issue of § 1692e(5) liability and DENIES both parties' motions for summary judgment on the issue of liability for the remainder of plaintiff's § 1692e claims.

### 4.    Defendant's attempts to collect a debt from plaintiff do not violate § 1692f.

Plaintiff's contends that defendant violated § 1692f and § 1692f(1) merely by attempting to collect money from the wrong person, the same conduct plaintiff alleged in support of its § 1692e argument. It is possible for the same conduct to violate multiple provisions of the FDCPA. Clark, 460 F.3d at 1177. For example, when a debt collector "pursues a debt it *knows* is overstated, [the debt collector] simultaneously misrepresents the debt in contravention of § 1692e *and* seeks to collect an amount that is not permitted by law in contravention of § 1692f(1)." Clark, 460 F.3d at 1178 (emphasis in original). However, this "in no way implies that a violation of one provision of the FDCPA *automatically* constitutes a violation of another." Clark, 460 F.3d at 1178 n.12 (emphasis in original). Section 1692f prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt." In addition to asserting that defendant violated § 1692f by attempting to collect amounts not owed by plaintiff, plaintiff asserts more specifically that defendant violated § 1692f(1), which prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation)

1   unless such amount is expressly authorized by the agreement creating the debt or permitted by

2   law." Ultimately, the case law plaintiff cites to advance his argument is not persuasive.[8] The

3   Court finds the decisions cited by defendant, and identified by the Court upon further research,

4   more compelling.

5          Many courts have interpreted section 1692f(1) to address the abusive practice of

6   "collecting an amount greater than that which is owing," not collecting on a debt that turns out to

7   have been incurred by another person. Thompson v. CACH, LLC, No. 14 CV 0313, 2014 WL

8   5420137, at *6 (N.D. Ill. Oct. 24, 2014) (rejecting the applicability of § 1692f(1) where the

9   "crux" of the consumer's argument was that defendants "sought to collect on a debt that she

10  never owed," as opposed to collecting on an amount greater than that defined in a loan

11  agreement); see also Barrios v. Enhanced Recovery Co., LLC, No. 15-CV-5291, 2018 WL

12  5928105, at *4 (E.D.N.Y. Nov. 13, 2018) ("The weight of authority holds that, where a collector

13  does not attempt to collect more than what the creditor is owed under the contract, they may not

14  be held liable under subsection 1692f(1) merely because they sought to collect from the wrong

15  person."); Petrosyan v. CACH, LLC, No. CV 12-8683-GW JEMX, 2013 WL 10156244, at *3

16  (C.D. Cal. Jan. 3, 2013) (dismissing a § 1692f(1) claim where plaintiff contended the account at

17  issue did not belong to him, not that defendant was "collecting something beyond what his

18

19          [8] Plaintiff relies on cases that did not concern § 1692f claims and/or were distinguishable on other
20  grounds. See Dkt. # 33 at 4–5 (citing Terran v. Kaplan, 109 F.3d 1428 (9th Cir. 1997) (did not concern
    § 1692f claims and the consumer did not dispute being the account holder); Dawson v. Genesis Credit
21  Mgmt., LLC, No. C17-0638-JCC, 2017 WL 5668073 (W.D. Wash. Nov. 27, 2017) (debtor disputed the
    amount at issue, not whether he was the account holder); Bereket v. Portfolio Recovery Assocs., LLC,
22  No. C17-0812RSMRSM, 2017 WL 4409480 (W.D. Wash. Oct. 4, 2017) (did not concern § 1692f claims
    and the court's analysis was limited to standing); Heathman v. Portfolio Recovery Assocs., LLC, No. 12-
23  CV-201-IEG RBB, 2013 WL 755674 (S.D. Cal. Feb. 27, 2013) (involved an account holder with a
24  different name); Davis v. Midland Funding, LLC, 41 F. Supp. 3d 919 (E.D. Cal. 2014) (holds only that a
    consumer claiming that an obligation was actually owed by another person may still pursue claims under
25  the FDCPA). Bodur v. Palisades Collection, LLC, 829 F. Supp. 2d 246 (S.D.N.Y. 2011) (did not concern
26  § 1692f claims).

27

28

ORDER REGARDING CROSS-MOTIONS FOR
SUMMARY JUDGMENT - 16

1   (allegedly nonexistent) agreement with [defendant] allowed [defendant] to collect, which is what

2   the plain language of section 1692f(1) concerns"); Story v. Midland Funding LLC, No. 3:15-CV-

3   00194-AC, 2015 WL 7760190, at *7 (D. Or. Dec. 2, 2015) (finding that plaintiff failed to state a

4   claim under § 1692f(1) "because the *amount* of the debt that [defendant] attempted to collect

5   [was] undisputed") (emphasis added)); Taylor v. Midland Credit Mgmt., Inc., No. 1:07-CV-582,

6   2008 WL 544548, at *4 (W.D. Mich. Feb. 26, 2008) ("[W]here the amount being collected by the

7   collection agency was not different than the amount owed, § 1692f(1) was inapplicable to

8   plaintiff's claim that the collection agency was attempting to collect the debt from the wrong

9   person."). This Court find these cases' interpretation of § 1692f(1) persuasive and concludes that

10  because § 1692f(1) specifically concerns the *amount* of obligation sought, which plaintiff does

11  not take issue with—plaintiff complains only that the obligation was sought from the wrong

12  individual—liability does not lie under § 1692f(1).

13         To the extent plaintiff challenges defendant's communications as otherwise constituting

14  an "unfair or unconscionable means to collect or attempt to collect any debt" under § 1692f

15  generally, this Court finds that the three collection letters at issue were "informational and

16  nonthreatening." Healey v. Trans Union LLC, No. C09-0956JLR, 2011 WL 1900149, at *10

17  (W.D. Wash. May 18, 2011). The Court fails to see how merely contacting an individual whose

18  name matches the account holder about the account debt, notifying the individual about the

19  process for disputing the validity, and providing the individual with § 1692g verification in

20  response to the individual's request, could qualify as "unfair or unconscionable means" in this

21  case. Accordingly, the Court GRANTS defendant summary judgment on the issue of liability for

22  plaintiff's claims under § 1692f and § 1692f(1).

23  **C.   WCAA and WCPA**

24         Violations of the WCAA constitute "per se" violations of the WCPA. Panag v. Farmers

25  Ins. Co. of Washington, 166 Wn.2d 27, 53 (2009). Plaintiff bases his WCPA claim on one

26  provision of the WCAA, RCW 19.16.250(21), which prohibits collection agencies from

27  attempting to collect "in addition to the principal amount of a claim any sum other than allowable

28

interest, collection costs or handling fees expressly authorized by statute, and, in the case of suit, attorney's fees and taxable court costs."[9] As defendant observes, the plain language of RCW 19.16.250(21) is similar to § 1692f(1) of the FDCPA, and it prohibits attempts to collect more from a debtor than is legally permitted. While many courts have interpreted § 1692f(1) of the FDCPA so that it would not apply to a debt collector who has merely attempted to collect from the wrong person, see supra Section V.B.4, the parties did not cite any decisions interpreting RCW 19.16.250(21) under similar factual circumstances, and the Court is aware of none. That said, the WCAA "is Washington's counterpart to the FDCPA." Schore v. Renton Collections, Inc., No. C17-1777-JCC, 2018 WL 2018417, at *5 (W.D. Wash. May 1, 2018). Given the similarity between RCW 19.16.250(21) and § 1692f(1), the Court will interpret the two provisions consistently. Therefore, the Court concludes that because RCW 19.16.250(21) specifically concerns the *amount* of obligation sought, liability does not lie under the WCAA or the WCPA for defendant, who merely attempted to collect an undisputed amount from a consumer whose name matched the name listed on the account. Accordingly, the Court GRANTS defendant summary judgment on the issue of liability for plaintiff's claims under the WCAA and CPA.

## VI.   CONCLUSION

For all the foregoing reasons, IT IS HEREBY ORDERED THAT,

(1)  "Plaintiff's Motion for Partial Summary Judgment" (Dkt. # 25) is DENIED.

(2) "Defendant Convergent Outsourcing, Inc.'s Motion for Summary Judgment" (Dkt. # 34) is GRANTED IN PART with respect to liability under § 1692e(5), § 1692f, § 1692f(1) of the FDCPA and under the WCAA and CPA.

---

[9] There is no dispute that defendant is a "collection agency" under the WCAA. See Dkt. # 25 at 5; Dkt. # 30; Dkt. # 34; RCW 19.16.100(4).

ORDER REGARDING CROSS-MOTIONS FOR
SUMMARY JUDGMENT - 18

1   (3)  "Defendant Convergent Outsourcing, Inc.'s Motion for Summary Judgment" (Dkt.

2        # 34) is DENIED IN PART with respect to liability under § 1692e, § 1692e(2), and

3        § 1692e(10).

4   DATED this 26th day of April, 2021.

5

6

7

8                                    Robert S. Lasnik
                                     United States District Judge
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28